## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MICHELLE NELSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUN COMMUNITIES, INC., GARY A. SCHIFFMAN, JOHN BANDINI MCLAREN, KAREN J. DEARING, and FERNANDO CASTRO-CARATINI,<br><br>Defendants. | Case No. 2:24-cv-13314-LVP-EAS |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

**PLEASE TAKE NOTICE** that Lead Plaintiff Patrick Logan and additional named plaintiff Michelle Nelson ("Plaintiffs"), through their undersigned attorneys, respectfully move this Court, the Honorable Linda V. Parker, United States District Judge of the United States Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, Michigan 48226, on a date and at a time designed by the Court, for entry of an Order: (a) preliminarily certifying the Settlement Class; (b) preliminarily approving the terms of the Settlement between Plaintiffs and Sun Communities Inc. as set forth in the Stipulation of Settlement ("Stipulation"), submitted concurrently herewith; (c) preliminarily approving the Plan of Allocation of Settlement Funds; (d) approving the form and method for providing notice of the Settlement; and (e) scheduling a hearing date for final approval of the Settlement.

This motion is based on this Notice of Motion, the Stipulation and all exhibits attached thereto, Plaintiffs' supporting Memorandum of Law, and the Declaration of Jonathan Horne and exhibits thereto, each filed contemporaneously herewith, and all pleadings, records, and papers on file in this action, and other such matters the Court may consider.

Defendants do not oppose the relief requested by this motion. Accordingly, Plaintiffs request that the Court enter the [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, attached as Exhibit A to the Stipulation.

Dated: April 9, 2026

Respectfully submitted,

THE ROSEN LAW FIRM, P.A

*/s/ Jonathan Horne*
Jonathan Horne
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: jhorne@rosenlegal.com
Email: philkim@rosenlegal.com

*/s/ David J. Shea*
David J. Shea (P41399)
SHEA LAW, PLLC
26100 American Dr., 2nd Floor
Southfield, MI 48034
Telephone: (248) 354-0224
Email: david.shea@shealaw.com

*Attorneys for Plaintiffs*

3

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

MICHELLE NELSON, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiff,

    v.

SUN COMMUNITIES, INC., GARY A.
SCHIFFMAN, JOHN BANDINI MCLAREN,
KAREN J. DEARING, and FERNANDO
CASTRO-CARATINI,

          Defendants.

Case No. 2:24-cv-13314-LVP-EAS

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................1

II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT.............2

  A.   Summary of Allegations .......................................................................2

  B.   Procedural History.................................................................................4

III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED
     FOR SETTLEMENT PURPOSES ......................................................5

  A.   The Settlement Class Satisfies Rule 23(a) ............................................5

    1.   Numerosity ..................................................................................5

    2.   Commonality................................................................................5

    3.   Typicality.....................................................................................6

    4.   Adequacy of Representation.........................................................7

  B.   The Settlement Class Satisfies Rule 23(b)(3) .......................................8

    1.   Common Questions of Law and Fact Predominate....................8

    2.   Class Treatment is Superior to Other Methods of Adjudication...........9

IV.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.......10

  A.   Standards Governing Approval of Class Action Settlements .................10

  B.   The Court Will Likely Be Able To Approve The Proposed Settlement
       Under Rule 23(e)(2).........................................................................12

    1.   Plaintiffs and Lead Counsel Have Adequately Represented The
         Settlement Class..........................................................................12

    2.   The Settlement Results From Good Faith Arm's-Length Negotiations

Between Experienced, Informed Counsel ...............................................13

3.     The Proposed Settlement is a Favorable Result for the Class..............14

4.     The Proposed Method of Distributing Relief to the Settlement Class Is Effective ..................................................................................................18

5.     Plaintiffs' Request for Attorneys' Fees is Reasonable ..........................19

6.     The Parties Have Agreed to a Side Agreement Regarding Opt-Outs .....
..................................................................................................................19

7.     The Plan of Allocation Treats all Settlement Class Members Equitably
..................................................................................................................20

C.   The Remaining *UAW* Factors Further Support Preliminary Approval.21

V.   THE COURT SHOULD APPROVE THE FORM AND METHOD OF PROVIDING NOTICE ...................................................................................21

VI.  PROPOSED SCHEDULE OF EVENTS.....................................................24

VII. CONCLUSION ..........................................................................................24

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Amchem Products, Inc., v. Windsor,*
521 U.S. 591 (1997)..................................................................................5, 8

*Anixter v. Home-Stake Prod. Co.,*
77 F.3d 1215 (10th Cir. 1996) ......................................................................17

*Bergmann v. GDS Holdings Limited,*
23-cv-04900-JAK-BFM (C.D. Cal.)................................................................22

*Bovee v. Coopers & Lybrand,*
216 F.R.D. 596 (S.D. Ohio 2003) ...................................................................6

*Christine Asia Co. v. Ma,*
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................7

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974).........................................................................18

*Dougherty v. Esperion Therapeutics, Inc.,*
2020 WL 2832252 (E.D. Mich. 2020).......................................................9, 10

*Duffy v. Mazda Motor of Am., Inc.,*
2025 WL 517608 (W.D. Ky. Feb. 17, 2025) ................................................11

*Fishoff v. Coty Inc.,*
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................................................16

*Garner Props. & Mgmt., LLC v. City of Inkster,*
333 F.R.D. 614 (E.D. Mich. 2020) .................................................................7

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) .......................................................................17

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..........................................................20

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ...............................................................6, 7

*In re Chevrolet Bolt EV Battery Litig.*,
2025 WL 3708892 (E.D. Mich. Dec. 22, 2025) ...........................................13, 21

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...............................................................17

*In re Home Point Cap. Inc. Sec. Litig.*,
2024 WL 3273275 (E.D. Mich. June 28, 2024)...................................................18

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................................21

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208,
2013 WL 2155387 (E.D. Tenn. May 17, 2013)...................................................19

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ...............................................................17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ...............................................................8

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ...............................................................11, 14

*Johnson v. Midwest Logistics Sys., Ltd.*,
2013 WL 2295880 (S.D. Ohio May 24, 2013) ...................................................19

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ...............................................................20

*Nova Scotia Health Employees' Pension Plan v. Comerica Inc.*,
2026 WL 323711 (9th Cir. Feb. 6, 2026) ...........................................................15

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009)...............................................................5, 6, 9

*Tchatchou v. India Globalization Capital*,
   18-cv-03396-PWG (D. Maryland)............................................................22

*Thomsen v. Morley Companies, Inc.*,
   639 F. Supp. 3d 758 (E.D. Mich. 2022)........................................13, 14

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) .......................................18

*Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.*,
   280 F.R.D. 332 (E.D. Mich. 2012) ...........................................................6

*Willis v. Big Lots, Inc.*,
   242 F. Supp. 3d 634 (S.D. Ohio 2017) ....................................................6

## Statutes

15 U.S.C. § 78u-4(a)(7)...........................................................................22

## Rules

Fed. R. Civ. P. 23 ...........................................................................passim

## Other Authorities

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at
   528 (1986)................................................................................................8

*Manual for Complex Litigation*, at §13.14 (4th ed. 2019) .....................10

## I.      PRELIMINARY STATEMENT

Lead Plaintiff Patrick Logan and additional named plaintiff Michelle Nelson ("Plaintiffs") and Defendants Sun Communities, Inc. ("Sun"), Gary A. Schiffman, John Bandini McLaren, Karen J. Dearing, and Fernando Castro-Caratini ("Defendants") have agreed to settle this putative class action for $2,300,000.00 under the terms set in the Stipulation of Settlement dated April 3, 2026 (the "Stipulation").[1]

After reviewing 15 years' worth of Sun's Securities and Exchange Commission ("SEC") filings and obscure public records, interviewing former Sun employees, consulting with three experts, drafting portions of an amended complaint, and holding a full-day mediation assisted by an experienced and respected mediator, Plaintiffs agreed to settle claims in this action for $2.3 million. The Settlement promises an immediate payout to class members who would otherwise only have a chance to potentially recover more years or even a decade down the line, despite imperfections in Plaintiffs' case. The Settlement is fair, reasonable, and adequate; it warrants the Court's preliminary approval because the Court will likely be able to grant final approval.

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as specified in the Stipulation. Citations to the "Complaint" are to the Complaint for Violation of the Federal Securities Laws, ECF No. 1. Citations to the "Horne Dec." are to the Declaration of Jonathan Horne In Support of Preliminary Approval of Settlement, filed herewith.

The Court should also grant ancillary relief necessary to give effect to its preliminary approval order. The Court should preliminarily certify the Settlement Class, which consists of investors who purchased Sun securities from February 28, 2019 through September 24, 2024, inclusive ("Class Period"), because it meets all the requirements of Rules 23(a) and 23(b)(3). The Court should approve the form and method for providing notice of the Settlement because it meets all constitutional and statutory requirements. The Court should approve the Plan of Allocation of the Settlement proceeds because, like the Settlement, it is fair, reasonable, and adequate. Finally, the Court should schedule a Settlement Fairness Hearing at which it will consider Plaintiffs' Motion for Final Approval of the Settlement with Settlement Class Members' claims, requests for exclusion, and objections in hand.

## II. SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A. Summary of Allegations

Sun was founded in 1975 by Milton Shiffman, the father of its Class Period CEO Gary Shiffman ("G. Shiffman"). By the time of Sun's 1993 IPO, G. Shiffman was the company's Chief Executive Officer, and his father was Chairman of its Board. Horne Dec. Ex. 1, at 3. G. Shiffman remained Sun's CEO from its IPO through the end of the Class Period.

G. Shiffman's tenure included examples related-party transactions. For instance, Sun employed both of G. Shiffman's sons; a partner at Sun's longtime

2

outside counsel sat on its Board; and companies owned by G. Shiffman or other Sun employees or directors leased Sun its offices and a private plane, and sold it telephone services. These related party transactions were disclosed in Sun's SEC filings. Horne Dec. Ex. 2 at 46.

Enter Brian Hermelin. Hermelin was one of Sun's independent directors. Sun told investors that its independent directors, including Hermelin, were independent under New York Stock Exchange ("NYSE") rules. Horne Dec. Ex. 2 at 38. In fact, Hermelin was not independent of G. Shiffman. Unbeknownst to investors, as confirmed by an article released decades earlier in a niche publication and obscure property filings, respectively, Hermelin and G. Shiffman were stepcousins and in 2019 Hermelin had lent G. Shiffman $4 million; the loan remained outstanding during the Class Period. Complaint ¶4. These entanglements called Hermelin's independence into question and provided evidence that he did not satisfy the NYSE independence rules.

On September 24, 2024, after trading, analyst firm Blue Orca, which held a short position in Sun's stock, released a report arguing that Sun was overvalued. *Id.* Among other allegations, Blue Orca's report revealed the undisclosed ties between Hermelin and G. Shiffman stated above. *Id.* Plaintiffs independently confirmed these allegations using primary documents. Horne Dec. ¶2.

On September 25, 2024, Sun's stock price fell 1.2%. Complaint ¶48.

3

### B.   Procedural History

This Action was filed on December 12, 2024 alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), on behalf of investors who purchased shares during the above-defined Class Period. *Nelson v. Sun Communities, Inc., et al.,* Case No. 2:24-CV-13314-LVP-EAS (E.D. Mich.). ECF No. 1. Only one putative class member, Mr. Logan, moved to be appointed lead plaintiff. ECF No. 16. On July 17, 2025, the Court granted Mr. Logan's unopposed motion, appointed him Lead Plaintiff, and appointed The Rosen Law Firm, P.A. ("Rosen")—his choice of attorneys—as lead counsel. ECF No. 17.

Mr. Logan began investigating claims to plead an amended complaint long before his appointment. Horne Dec. ¶4. So after appointment, Mr. Logan understood the case well enough to make a settlement demand and propose to Defendants that the Parties hold an early mediation to explore the possibility of a settlement. *Id.* ¶5. An early settlement would save considerable expenses, resolve mutual uncertainty, and allow a prompt resolution that would benefit both putative class members and Defendants. The Parties agreed to hold an in-person mediation on November 24, 2025, assisted by Jed Melnick, Esq., of JAMS.

Before the mediation, the Parties exchanged detailed mediation statements. At the mediation, the Parties engaged in zealous settlement discussions. At the end of a full day's negotiations, the Parties agreed to settle the case for $2.3 million. Horne

4

Dec. ¶¶7-8.

## III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Courts may certify settlement classes. *Amchem Products, Inc., v. Windsor,* 521 U.S. 591, 620 (1997). Before granting preliminary approval of a class action settlement, courts should determine if the proposed settlement class can be certified. *Id.* at 620. To certify a class, the Court must find that the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and 23(b)(3) (predominance and superiority) are met. *Id.* at 613-14. The Court should preliminarily certify the Settlement Class because it meets all these requirements.

### A. The Settlement Class Satisfies Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement is generally assumed to have been met in class action suits involving nationally traded securities." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009) (internal quotations omitted). Throughout the Class Period, Sun common stock was actively traded on the NYSE. Thus, there are likely thousands of potential class members, more than sufficient for numerosity. *Id.* at 442.

#### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ.

P. 23(a)(2). "[T]here need only be one question common to the class." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003). In securities cases, "[w]hether Defendants made certain misrepresentations and omissions, whether such misrepresentations and omissions were material, and whether Defendants acted with the requisite scienter, are all common issues capable of classwide resolution." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 645 (S.D. Ohio 2017).  Here, the central questions are whether Defendants made false statements, whether they made them with scienter, and whether they caused Plaintiffs' losses. They are all common issues. *See Ross*, 257 F.R.D. at 443.

### 3.     Typicality

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Class members need not share identical claims, because the typicality requirement is only meant to ensure "that the named representative's interests align with those of the class and that the plaintiff will advance the interest of the class." *Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.,* 280 F.R.D. 332, 339 (E.D. Mich. 2012). Here, Plaintiffs and members of the Settlement Class purchased Sun common stock during the Class Period at prices artificially inflated by allegedly false and misleading statements. They all suffered damages when the

Blue Orca report revealed the statements were false. Plaintiffs' claims are typical.

### 4.      Adequacy of Representation

Rule 23(a)(4)'s adequacy requirement ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020). The test for adequacy has two prongs: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083.

Here, Plaintiffs are adequate. First, Plaintiffs and the Settlement Class Members all bought shares at artificially inflated prices and were damaged thereby, so Plaintiffs' interests are the same as the Settlement Class's: to recover as much of their losses as possible. Second, proposed Class Counsel, Rosen, is well-qualified to represent all Settlement Class members. Rosen has represented investors in securities class actions throughout the Nation and secured $2 billion in settlements. Courts around the country have recognized Rosen's expertise. *See, e.g.*, *Christine Asia Co. v. Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (achieving $250 million settlement in securities class action with the Court stating that "[t]he quality of representation by [Rosen] and Defendants' counsel was high in this case . . ."); Horne Dec. Ex. 3 (Rosen Firm Resume). Thus, Rosen has, and will continue to,

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

### B.     The Settlement Class Satisfies Rule 23(b)(3)

Plaintiffs seek class certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both the predominance and superiority requirements are met.

### 1.     Common Questions of Law and Fact Predominate

Class certification is appropriate when common questions are a significant aspect of a case and they can be resolved in a single action. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal [so] in the mine run of cases, it remains the black letter rule that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013) (cleaned up). This case shows that predominance can be "readily met" in securities fraud class actions. *Amchem*, 521 U.S. at 625. If every class member were to bring an individual action, they would use the same evidence to prove that the same representations were false, made with scienter, and

8

caused their losses. These common issues predominate over the relatively narrow and mechanical issue of the amount of each Settlement Class Member's damages.

### 2. Class Treatment is Superior to Other Methods of Adjudication

Rule 23(b)(3) requires that the Court determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four factors to guide this analysis: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

First, Sun investors harmed by the misconduct alleged in this action benefit from settlement class treatment, because the alternative is litigating separate and costly individual actions. "It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions." *Ross*, 257 F.R.D. at 455. "In a securities fraud case involving nationally traded stock, where there are numerous individual potential plaintiffs, and where each individual's recovery might be relatively small, a class action is the preferred litigation model." *Dougherty v. Esperion Therapeutics, Inc.,* 2020 WL 2832252, at *8 (E.D. Mich. 2020). Second, Plaintiffs are not aware of any other class actions asserting claims on behalf of Sun

9

investors arising from the same set of facts. Third, "trying the common issues in this case to a single jury saves time and judicial resources, and guards against the possibility of inconsistent verdicts." *Dougherty*, 2020 WL 2832252, at *9. Fourth, securities fraud claims are routinely certified and present no manageability issues. *Id.* ("And district courts … do not lack experience and expertise in trying securities fraud cases as class actions."). Thus, a class action is superior to other methods for fairly and efficiently adjudicating the controversy. And this Court is the best forum for adjudicating the Settlement Class's claims because Sun maintains its headquarters in this District.

*  *  *  *  *

The Settlement Class meets all the requirements of Rules 23(a) and 23(b)(3). The Court should conditionally certify it for settlement purposes.

## IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. Standards Governing Approval of Class Action Settlements

Court approval of class action settlements is a two-step process. First, the court enters a preliminary approval order authorizing notice of the proposed settlement to be provided to the class. Second, after the class is notified, the Court holds a hearing to consider whether the settlement warrants final approval. *See Manual for Complex Litigation*, at §13.14 (4th ed. 2019).

The question at preliminary approval is whether the Court "will likely be able

10

to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1). Rule 23(e)(2) provides:

> ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition to the Rule 23(e)(2) factors, courts in the Sixth Circuit also consider "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*" and "*UAW* factors"). The Rule 23(e)(1) factors do not displace the *UAW* factors. *Duffy v. Mazda Motor of Am., Inc.*, 2025 WL 517608, at *3 (W.D. Ky. Feb. 17, 2025).

11

**B.    The Court Will Likely Be Able To Approve The Proposed Settlement Under Rule 23(e)(2)**

**1.    Plaintiffs and Lead Counsel Have Adequately Represented The Settlement Class**

The Court must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, Plaintiffs and Lead Counsel have adequately represented the Settlement Class. Plaintiffs' claims are typical of the claims of the Settlement Class and they have no interests antagonistic to the Settlement Class. Plaintiffs are overseeing the litigation and communicating regularly with Lead Counsel.

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Rosen has considerable experience litigating securities class actions. *See* 7-8, above. Before entering the Settlement, among other things, Lead Counsel investigated the claims in the Complaint, interviewed former Sun employees, reviewed 15 years of Sun SEC filings, conducted online and public records searches on the financial affairs of Sun's executives and directors and their relatives, reviewed filings and transcripts in a half-dozen state and federal cases

12

involving or implicating Sun's management, reviewed transcripts of Sun conference calls and analyst reports published about Sun, prepared key portions of a draft amended complaint, retained a damages expert to evaluate the case, discussed accounting allegations with an accounting expert, discussed methods and costs of notifying the class with a claims administrator, prepared a mediation statement, and held a mediation. Horne Dec. ¶3. Combined, these steps provided Lead Counsel with a thorough understanding of the strengths and weaknesses of the case.

Thus, Lead Counsel is experienced enough, and understands the case well enough, to evaluate the Settlement and determine that it is in the Settlement Class's best interests.

### 2. The Settlement Results From Good Faith Arm's-Length Negotiations Between Experienced, Informed Counsel

Under Rule 23(e)(2)(B), courts evaluate whether the proposed settlement "was negotiated at arm's-length." "Courts consistently approve class action settlements achieved through arms-length negotiations, particularly if an independent mediator participated in those negotiations." *In re Chevrolet Bolt EV Battery Litig.*, 2025 WL 3708892, at \*6 (E.D. Mich. Dec. 22, 2025); *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 768 (E.D. Mich. 2022) (approving settlement reached three months after complaint filing and finding that mediation showed negotiations were at arm's length). "[C]ourts in this District presume the absence of fraud or collusion unless there is evidence to the contrary." *Chevrolet*,

13

2025 WL 3708892 at *6.

The Settlement was negotiated by counsel with extensive experience in securities litigation who were well acquainted with the strengths and weaknesses of their positions. An experienced mediator, Mr. Melnick, facilitated the negotiations. Moreover, before the mediation session, the Parties exchanged detailed mediation submissions. The arm's-length nature of the negotiations and Mr. Melnick's involvement show that the Settlement is fair and was achieved free of collusion. *Thomsen*, 639 F. Supp. 3d at 768.

### 3.    The Proposed Settlement is a Favorable Result for the Class

In assessing the proposed Settlement, Rule 23(e)(2) requires the Court to balance the benefits afforded to the Settlement Class—including the immediacy and certainty of a recovery—against the costs, risks, and delay of proceeding with the litigation. Fed. R. Civ. P. 23(e)(2)(C). Likewise, under the *UAW* factors, the Court considers "(2) the complexity, expense and likely duration of the litigation [and] (4) the likelihood of success on the merits." *UAW*, 497 F.3d at 631.

The Settlement is a favorable result given the significant risks of continued litigation. At the time the Settlement was reached, Defendants still had numerous procedural mechanisms to dismiss the case. There was no guarantee that Plaintiffs would have even survived Defendants' motion to dismiss, let alone prevailed over Defendants' arguments at class certification, summary judgment, trial and appeal.

14

And the liability and damages arguments Defendants would press to the Court and the jury were substantial.

First, the corrective disclosure in this case is a report by a self-interested short seller, Blue Orca. Moreover, while Blue Orca revealed new fraud-related information, Blue Orca also highlighted publicly-disclosed information that it believed investors had not sufficiently appreciated. Yet, still, the drop that followed this short seller report is relatively modest. ¶48. Plaintiffs risked a finding that the false statements were immaterial, or that they did not cause Plaintiffs' losses, because they would have to remove the portion of the drop that did not result from the fraud from an already modest drop. *See Nova Scotia Health Employees' Pension Plan v. Comerica Inc.*, 2026 WL 323711, at *2 (9th Cir. Feb. 6, 2026).

Second, Plaintiffs may not be able to prove that the false statements were material. The short-seller report revealed that Hermelin, one of Sun's outside directors, had made its CEO a $4 million loan. But Hermelin was one of up to nine outside directors, and while he chaired Sun's compensation committee, Sun's Nominating and Corporate Governance Committee—on which Hermelin did not sit—was responsible for approving and disclosing related party transactions. Horne Dec. Ex. 2 at 38, 43. Thus, Hermelin, by himself, had limited ability to direct proceeds to G. Shiffman.

Third, the allegedly false statements were that Sun's outside directors were

15

independent within the meaning of the NYSE rules, but these rules generally forbid relationships between the director and the company, not between the director and executives in their personal capacity. NYSE Listed Company Manual, Rule 303A.02, *available at* https://nyseguide.srorules.com/listed-company-manual/09013e2c85c00746. While there is a residual clause prohibiting any relationship that might affect the director's judgment, that is not as forceful as an express prohibition of the specific conduct Hermelin was engaged in. *Id.*

Fourth, the traditional indicia of wrongdoing are not present here. After the alleged misconduct, Sun did not restate its financial statements, face civil or criminal charges, or abruptly terminate any senior executives. Sun's value has not collapsed; today, it trades at approximately the same price as before the Blue Orca report.

Finally, Plaintiffs face risks pleading and proving scienter. *See Fishoff v. Coty Inc.,* 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim") *aff'd* 634 F.3d 647 (2d Cir. 2011). While G. Schiffman surely knew that he owed $4 million to a Sun outside director, the NYSE independence rules do not explicitly prohibit that kind of relationship. Thus, Plaintiffs face more risk pleading and proving that G. Shiffman knew or was reckless in not knowing that Sun's disclosures would materially mislead investors.

In any case, "[c]ourts favor settlement when litigation is likely to be complex,

16

expensive, or drawn out." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). Securities class actions can take more than a decade and tens of millions of dollars to take to their conclusion. Indeed, they are so lengthy and complex that plaintiffs risk that the law will shift beneath their feet, eliminating a victory that was unimpeachable under the standards that existed when it was secured. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom.* 838 F.3d 223 (in case brought in 2002 and affirmed in 2016, Supreme Court decision after entry of verdict in Plaintiffs' favor reduced the billion-dollar verdict to an approximately $78 million recovery); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on error in jury instruction created by intervening change in the law); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231-32 (10th Cir. 1996) (case filed in 1973 and tried to a verdict for plaintiffs in 1988 with jury instructions compelled by then-controlling precedent which the Supreme Court overruled in a 1994 opinion causing the court to vacate the jury verdict in 1996).

Plaintiffs' expert estimates maximum damages of approximately $46.3 million based on the drop in Sun's stock price on the two days following the corrective disclosure. Horne Dec. ¶5. But courts recognize that maximum damages are a "best case scenario" which "occur[] with the regularity of unicorn sightings."

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *6 (E.D. Pa. Sept. 20, 2017). The proposed Settlement provides a guaranteed immediate cash payment of $2.3 million for the Settlement Class, or 5.0% of the total maximum damages. While this recovery is lower than the median recovery in securities class actions with similar damages, this case is riskier than the median case. *See* Horne Dec. Ex. 4; *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

### 4. The Proposed Method of Distributing Relief to the Settlement Class Is Effective

The method of providing notice and administering claims is effective and satisfies Rule 23(e)(2)(C)(ii). Because the Parties do not possess individual investor trading data, the Claims Administrator will solicit claims by providing notice to holders of record and brokers. The Claims Administrator will then process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan), after Court approval. This is the canonical method of distributing relief in securities class actions. *E.g. In re Home Point Cap. Inc. Sec. Litig.*, 2024 WL 3273275, at *4 (E.D. Mich. June 28, 2024)

### 5.    Plaintiffs' Request for Attorneys' Fees is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As the proposed Notice states, Lead Counsel intends to seek an award of attorneys' fees of no more than one third of the Settlement Fund and recover litigation expenses in an amount not to exceed $55,000. Lead Counsel will file and post on the case website a detailed fee request supported by a memorandum of law and declaration before the deadline for Settlement Class Members to file objections or requests. If awarded, Lead Counsel's fee request will fall within the range of reasonable attorneys' fees awarded in this Circuit. "[E]mpirical studies show that, regardless [sic] whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (award of one-third settlement fund "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.")  Regardless, the amount and timing of the attorneys' fees are not terms of the Settlement. If the Court believes either is unreasonable, it can award smaller fees or delay payment.

### 6.    The Parties Have Agreed to a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires disclosure of any side agreement. The Parties have

19

agreed to a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Sun common stock represented by such opt outs equals or exceeds a certain number, Sun shall have the option to terminate the Settlement. *See* Stipulation §XI.F. Following standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See e.g., N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.,* 315 F.R.D. 226, 240 (E.D. Mich. 2016) ("The opt-out threshold is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

**7. The Plan of Allocation Treats all Settlement Class Members Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether a settlement treats class members equitably relative to one another. "An allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). The Plan of Allocation, as set out in the Long Notice, provides for distribution of the Net Settlement Fund to Authorized Claimants *pro rata*, based on when each investor purchased or acquired the relevant shares and at what price. The Plan of Allocation is reasonable;

20

indeed, it simply implements Plaintiffs' theory of the case.

### C.   The Remaining *UAW* Factors Further Support Preliminary Approval

The seventh factor, the public interest, favors approval because there is a "strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Chevrolet*, 2025 WL 3708892, at *8.

The third factor, the amount of discovery completed, does not cut against approval. "[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011). The "contours of this litigation are not a mystery". *Id.* Even if they discovered a Battle of Gettysburg's worth of smoking guns, Plaintiffs would still face the risks that the jury would find Defendants' false statements immaterial, either because of the content and nature of the false statements or the modest stock price reaction after their correction.

### V.   THE COURT SHOULD APPROVE THE FORM AND METHOD OF PROVIDING NOTICE

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Federal Rule of Civil Procedure 23(c)(2), the Court "must direct to class members the best notice that is practicable under the

21

circumstances, including individual notice to all members who can be identified through reasonable effort." Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The requirements of the PSLRA and of due process are similar. 15 U.S.C. § 78u-4(a)(7).

As outlined in the Proposed Preliminary Approval Order (Exhibit A to the Stipulation), the notice plan includes emailing direct links to the Long Notice and Claim Form to all those whose email addresses can be identified with reasonable effort, supplemented by multiple publications of the Summary Notice over various newswires. In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Long Notice, Claim Form, and the Preliminary Approval Order. Courts have approved similar notice programs. *See, e.g., Bergmann v. GDS Holdings Limited*, 23-cv-04900-JAK-BFM (C.D. Cal.) (Dkt. No. 76 at 9-10); *Tchatchou v. India Globalization Capital*,18-cv-03396-PWG (D. Maryland) (Dkt. No. 88 at ¶¶13-14, 17-18).

Further, the Notice includes all the information required by the PSLRA, 15 U.S.C. §78u-4(a)(7), as well as additional relevant information in securities class actions. The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged and how to request exclusion from the Settlement (and clearly states that all those

22

who do not exclude themselves will be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Lead Counsel and Plaintiffs; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Long Notice to clients for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[2]

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice provides that Lead Counsel will apply for attorneys' fees of up to one third of the Settlement Fund, reimbursement of expenses of up to $55,000, and an award to Lead Plaintiff of up to $3,500 and to Plaintiff Nelson up to $2,500, all to be paid from the Settlement Fund.

Thus, the proposed notice plan in this case meets the requirements of due process, Rule 23, and the PSLRA, and is typical of notice plans in similar securities actions. For these reasons, the notice program should be approved by the Court.

---

[2] Ex. A-1, with Federal Judicial Center, *Securities Class Action Certificate and Settlement:        Full        Notice*.        Available        at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

## VI.   PROPOSED SCHEDULE

| Event | Deadline for Compliance |
|---|---|
| Emailing links to Long Notice and Claim Form; Creating website with Stipulation, Long Notice, and Claim Form | Within 22 calendar days after the entry of the Preliminary Approval Order (Preliminary Approval Order, ¶¶15, 16) |
| Publication of the Summary Notice | On four occasions: (a) 7 days after date of notification; (b) 7 days thereafter; (c) 7 days thereafter; and (d) 14 days before the claims filing deadline (¶19) |
| Submission deadline for Claim Forms | No later than 28 calendar days before the Settlement Hearing (¶21(a)) |
| Submission deadline for requests for exclusion and for objections | No later than 28 calendar days before the Settlement Hearing (¶¶23, 29) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 35 calendar days before the Settlement Fairness Hearing (¶32) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 7 calendar days before the Settlement Fairness Hearing (¶33) |
| Date for the Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order |

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed Settlement and enter the accompanying Preliminary Approval Order.

24

Dated: April 9, 2026

Respectfully submitted,

THE ROSEN LAW FIRM, P.A

*/s/ Jonathan Horne*
Jonathan Horne
Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: jhorne@rosenlegal.com
Email: philkim@rosenlegal.com

*/s/ David J. Shea*
David J. Shea (P41399)
SHEA LAW, PLLC
26100 American Dr., 2nd Floor
Southfield, MI 48034
Telephone: (248) 354-0224
Email: david.shea@shealaw.com

*Attorneys for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Court's ECF system on April 9, 2026. Notice of this filing will be sent automatically by operation of the Court's system to all counsel of record.

/s/ David J. Shea
David J. Shea
